FILED IN CLERK'S OFFICE
U.S.D.C. - Atlanta

JAN 3 0 2009

JAMES N. HATTEN, Clerk
By: _____ Deputy Clerk

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | | |
|---|---|---|
| CHICAGO TITLE INSURANCE CO. and FIDELITY NATIONAL TITLE INSURANCE CO., | ) ) ) ) | |
| Plaintiffs, | ) ) ) | |
| v. | ) ) | |
| EQUITY TRUST COMPANY AS CUSTODIAN FOR THE BENEFIT OF THE IRA ACCOUNT OF H. OLIVER WELCH, LINC INVESTMENTS, LLC, H. OLIVER WELCH, and W. FRANK NEWTON, | ) ) ) ) ) ) ) ) | CIVIL ACTION CASE NO. 1 09-CV-0271 |
| Defendants. | ) ) ) | |

## COMPLAINT

Plaintiffs Chicago Title Insurance Co. ("CTIC") and Fidelity National Title Insurance Co. ("FNTIC") (collectively, the "Plaintiffs") file this complaint against Defendants Equity Trust Company as custodian for the benefit of the IRA account of H. Oliver Welch, Linc Investments, LLC ("Linc"), H. Oliver Welch ("Welch"), and W. Frank Newton ("Newton") (collectively, the "Defendants") showing the Court as follows:

## INTRODUCTION

### 1.

Plaintiffs are among the nation's leading and largest title insurance companies. Plaintiffs, directly or through agents, issue title insurance policies in connection with real estate loans (among other transactions), insuring real estate matters to lenders, borrowers and/or other participants to transactions involving the purchase, sale, and financing of real estate.

### 2.

As set forth more fully below, this suit seeks recovery by Plaintiffs from Defendants of amounts in excess of $1,600,000.00 as a result of Defendants' receipt of the tainted proceeds of a series of mortgage loans made by DJ Mortgage, LLC ("DJ"), Bristol Realty Partners, LLC ("Bristol"), and West Atlanta Capital, LLC ("WAC") (collectively, the "Insured Lenders") that were fraudulently procured by Alliance Resource Management, LLC ("ARM") and/or its principal Edward Farley ("Farley") (collectively or individually, "ARM/Farley").

### 3.

Defendants acted in concert and/or conspiracy with one another and/or ARM/Farley to cause ARM/Farley to procure funds from thee Insured Lenders to serve as the source of repayment to Defendants of loan amounts which they had earlier discovered to have been fraudulently procured from them by ARM/Farley.

AT1 32520167.8

Defendants knew or should have known that the source of the repayment amounts in question that they received constituted the fruits of fraudulently procured loans similar to those that had been fraudulently procured from them.

4.

Each of the Insured Lenders was issued title insurance policies by either FNTIC or CTIC on the secured loans that are the subject of this action. The Insured Lenders made title insurance claims against Plaintiffs under those policies as a result of losses arising from such secured loans, and Plaintiffs have made payment of such Insured Lenders' claims. Upon payment of such claims, Plaintiffs became subrogated to the rights of the Insured Lenders with respect to the subject loans, including the claims that the Insured Lenders have against the Defendants. Under the law of unjust enrichment, the Uniform Fraudulent Transfers Act as adopted by Georgia, and the Georgia RICO Act, Plaintiffs are entitled to judgment against Defendants to recover the amounts that Defendants were unjustly enriched as a result of the fraudulently procured loans made by the Insured Lenders that are the subject of this action.

AT1 32520167.8

## **PARTIES, JURISDICTION, AND VENUE**

### 5.

Plaintiff CTIC is a Missouri corporation, is authorized to do business in Georgia, and has its principal place of business in Jacksonville, Florida.

### 6.

Plaintiff FNTIC is a California corporation, is authorized to do business in Georgia, and has its principal place of business in Jacksonville, Florida.

### 7.

Defendant Equity Trust Company, as custodian for the IRA account of H. Oliver Welch, (hereafter be referred to either as "ETC" or "ETC/Welch") is a South Dakota corporation, with its principal place of business in Ohio. Service of process may be made upon Pierce H. McDowell, III, ETC's registered agent, at 201 S. Phillips, Suite 200, Sioux Falls, South Dakota, 57104-6317.

### 8.

Defendant Linc is a Georgia limited liability company with its registered office in DeKalb County, Georgia. According to the records of the Georgia Secretary of State, service of process may be made upon Linc through its registered agent, Sanders C. Wilton, at 1950 Century Blvd., Suite 10, Acworth, DeKalb County, Georgia 30345.

-4-

ATI 32520167.8

9.

Defendant Welch is an individual who maintains his principal residence and can be served with service of process at 1417 Wesley Walk, Atlanta, Fulton County, Georgia, 30327.

10.

Defendant Newton is an individual who maintains his principal residence and can be served with service of process at 3527 Camens Way, Buford, Gwinnett County, Georgia, 30519.

11.

Diversity jurisdiction exists in this Court pursuant to 28 U.S.C. § 1332 because the Plaintiffs, on the one hand, and the Defendants, on the other hand, are citizens of different states and the amount in controversy exceeds $75,000.00.

12.

Venue is proper in this Court pursuant to 28 U.S.C. § 1391(a) as to all Defendants, because a substantial part of the acts and omissions and properties which are the subject of this action took place and are located in this district.

**Welch, through ETC/Welch, makes a series of mortgage loans to ARM/Farley**

13.

In or about 2005, Welch met with ARM's principal, Farley, who explained to Welch that ARM's business plan was to utilize short-term mortgage loans from

so-called "investors" to acquire and/or improve real estate in metropolitan Atlanta to then re-sell or rent at a profit.

14.

Farley informed Welch that in exchange for each loan made, investors such as Welch would receive a promissory note with a relatively high interest rate (typically 16%) and a first priority security interest in the property for which the loan proceeds were to be used to acquire and/or improve.

15.

In or about 2005, Welch, through ETC/Welch, began making what he initially was informed and understood to be first priority mortgage loans to ARM/Farley with funds coming from Welch's IRA account which he managed through ETC/Welch.

### Newton, through Linc, makes a series of mortgage loans to ARM/Farley

16.

In or about December 2005, Welch informed his long-time friend and occasional business partner, Newton, about the loans he was making to ARM/Farley.

17.

In or about January 2006, Newton met with Farley for several hours and was informed by Farley of the above-referenced ARM/Farley business plan.

-6-

18.

Farley informed Newton that in exchange for each loan made, Newton would receive a promissory note with a high interest rate (typically 16%) and a first priority security interest in each property for which the loan proceeds were used to acquire and/or improve.

19.

In or about February 2006, Newton, through Linc, began making what he initially was informed and understood to be first priority mortgage loans to ARM/Farley with funds coming from Newton's 401(k) account which he managed through Linc.

20.

Linc is an entity created in or about 2006 by Newton as a vehicle for investing Newton's retirement plan proceeds.

**Newton and Welch uncover ARM's fraudulent scheme**

21.

In or about August 2006, ARM/Farley were delinquent in the repayment of loan amounts owed to ETC/Welch and Linc, and Newton and Welch worked together to attempt to obtain repayment of the delinquent loan amounts.

22.

In the course of such efforts, Newton and Welch obtained a title search on the properties which secured their delinquent loans and learned that their security interests were not in first priority position, contrary to what ARM/Farley had previously represented to them.

23.

Accordingly, in or about August 2006, Newton and Welch learned that they had been defrauded by ARM/Farley and that ARM/Farley had a pattern and practice of fraudulently procuring mortgage loans.

24.

Armed with this knowledge, Newton and Welch confronted ARM/Farley and demanded that ARM/Farley do what was necessary to obtain funding to repay the delinquent mortgage loans that ARM/Farley had fraudulently procured from Defendants.

25.

As a result of such confrontation and demand, ARM/Farley continued the prior pattern and practice of fraudulently procuring mortgage loans in order to obtain funds to satisfy Defendants' delinquent loans.

26.

As set forth more fully below, ARM/Farley proceeded to fraudulently procure mortgage loans from the Insured Lenders, and ARM/Farley caused the bulk of the proceeds of such loans to be used to repay Defendants' loans (the "ARM Repayments").

27.

Notwithstanding Defendants' prior knowledge of ARM/Farley's pattern and practice of fraudulently procuring loans, Defendants accepted the benefit of the ARM Repayments without making a reasonable inquiry with respect to their source.

28.

Defendants knew or should have known that ARM/Farley had fraudulently procured loans from third parties such as the Insured Lenders in order to serve as a source of funds to repay the loans that ARM/Farley had fraudulently procured from Defendants.

**The DJ Loans**

29.

In late September and early October 2006, DJ made a series of loans to ARM that were secured by security interests in the following residential properties located in metro-Atlanta (collectively, the "DJ Properties"):

(a)   $134,550 loan on September 29, 2006 secured by a security deed in

1620 Twin Bridge Lane, Lawrenceville, Georgia;

(b)   $83,200 loan on September 29, 2006 secured by a security deed in

6274 Jane Road, Doraville, Georgia;

(c)   $86,450 loan on September 29, 2006 secured by a security deed in

1307 Gettysburg Place, Lawrenceville, Georgia;

(d)   $109,200 loan on September 29, 2006 secured by a security deed in

2373 Heatherton Circle, Dacula, Georgia;

(e)   $94,900 loan on September 29, 2006 secured by a security deed in

2618 Morning Glory Place, Lawrenceville, Georgia; and

(f)   $500,000 loan on October 10, 2006 secured by a security deed in 3370

Shady Cove Road, Cumming, Georgia.

30.

With knowledge of the falsity of its representations and the intent to procure

the above-referenced loans from DJ (the "DJ Loans") as a result of such false

representations, ARM/Farley falsely informed DJ that it was receiving first priority

security interests in the DJ Properties in exchange for the DJ Loans, and DJ relied

upon such false representations in making such loans.

ATI 32520167.8

31.

Unbeknownst to DJ, the security interests that it received in connection with the DJ Loans were in junior positions.

32.

As a result of such junior positions, DJ suffered thereafter substantial losses on the below-referenced loans in amounts that exceeded the below-referenced portions of the proceeds of such loans that were received by Defendants.

33.

Portions of the proceeds of the fraudulently procured DJ Loans were distributed to ETC/Welch and Linc as follows:

(a)   On or about September 29, 2006, ETC/Welch received $124,367.57 from DJ's loan proceeds on its 1620 Twin Bridge Lane loan;

(b)   On or about September 29, 2006, ETC/Welch received $76,435.67 from DJ's loan proceeds on its 6274 Jane Road loan;

(c)   On or about September 29, 2006, ETC/Welch received $53,747.51 from DJ's loan proceeds on 1307 Gettysburg Place;

(d)   On or about September 29, 2006, Linc received $24,541.74 from DJ's loan proceeds on 1307 Gettysburg Place;

(e)     On or about September 29, 2006, ETC/Welch received $100,637.56

from DJ's loan proceeds on its 2373 Heatherton Circle loan;

(f)     On or about September 29, 2006, Linc received $87,321.80 from DJ's

loan proceeds on its 2618 Morning Glory Place loan; and

(g)     On or about October 10, 2006, Linc received $366,073.75 from DJ's

loan proceeds on its 3370 Shady Cove Road loan.

34.

In total, ETC/Welch received at least $355,188.31 from DJ's fraudulently

procured loan proceeds.

35.

In total, Linc received at least $477,937.29 from DJ's fraudulently procured

loan proceeds.

**The Bristol Loans**

36.

On or about September 29, 2006, Bristol made a series of loans to ARM that

were secured by security interests in the following residential properties located in

metro Atlanta (collectively, the "Bristol Properties"):

(a)     $114,400 loan secured by a security deed in 5634 Mahogany Court,

Lawrenceville, Georgia;

-12-

(b)     $91,650 loan secured by a security deed in 3678 Willow Wood Way, Lawrenceville, Georgia;

(c)     $113,100 loan secured by a security deed in 4681 Sagemont Court, Norcross, Georgia; and

(d)     $94,250 loan secured by a security deed in 550 Corley Brook Way, Lawrenceville, Georgia.

### 37.

With knowledge of the falsity of its representations and the intent to procure the above-referenced loans from Bristol (the "Bristol Loans") as a result of such false representations, ARM/Farley falsely informed Bristol that it was receiving first priority security interests in the Bristol Properties in exchange for the Bristol Loans, and Bristol relied upon such false representations in making such loans.

### 38.

Unbeknownst to Bristol, the security interests that it received in connection with the Bristol Loans were in junior positions.

### 39.

As a result of such junior positions, Bristol suffered thereafter substantial losses on the below-referenced loans in amounts that exceeded the below-

-13-

referenced portions of the proceeds of such loans that were received by Defendants.

40.

Portions of the  proceeds of the fraudulently procured Bristol Loans were distributed to ETC/Welch and Linc as follows:

(a)     On or about September 29, 2006, ETC/Welch received $105,561.56 from Bristol's loan proceeds on its 5634 Mahogany Court loan;

(b)     On or about September 29, 2006, ETC/Welch received $84,341.56 from Bristol's loan proceeds on its 3678 Willow Wood Way loan;

(c)     On or about September 29, 2006, ETC/Welch received $46,688.57 from Bristol's loan proceeds on its 4681 Sagemont Court loan;

(d)     On or about September 29, 2006, Linc received $57,638.49 from Bristol's loan proceeds on its 4681 Sagemont Court loan; and

(e)     On or about September 29, 2006, Linc received $86,739.55 from Bristol's loan proceeds on its 550 Corley Brook Way loan.

41.

In total, ETC/Welch received at least $236,591.68 from Bristol's fraudulently procured loan proceeds.

-14-

42.

In total, Linc received at least $144,378.04 from Bristol's fraudulently procured loan proceeds.

### The WAC Loans

43.

In early November 2006, WAC made a series of loans to ARM that were secured by security interests in the following residential properties located in metro Atlanta (collectively, the "WAC Properties"):

(a) $83,400 loan made on November 1, 2006 secured by a security deed in 2199 Marshes Glenn Drive, Norcross, Georgia;

(b) $142,200 loan made on November 3, 2006 secured by a security deed in 3565 Deep Cove Drive, Cumming, Georgia;

(c) $100,200 loan made on November 3, 2006 secured by a security deed in 1350 Brisbane Drive, Dacula, Georgia; and

(d) $89,400 loan made on November 3, 2006 secured by a security deed in 1806 Hammond Woods Circle, Marietta, Georgia.

44.

With knowledge of the falsity of its representations and the intent to procure the above-referenced loans from WAC (the "WAC Loans") as a result of such false representations, ARM/Farley falsely informed WAC that it was receiving first

-15-

priority security interests in the WAC Properties in exchange for the WAC Loans, and WAC relied upon such false representations in making such loans.

45.

Unbeknownst to WAC, the security interests that it received in connection with the WAC Loans were in junior positions.

46.

As a result of such junior positions, WAC suffered thereafter substantial losses on the below-referenced loans in amounts that exceeded the below-referenced portions of the proceeds of such loans that were received by Defendants.

47.

Portions of the proceeds of the fraudulently procured WAC Loans were distributed to ETC/Welch and Linc as follows:

(a) On or about November 1, 2006, Linc received $80,226.00 from WAC's loan proceeds on its 2199 Marshes Glenn Drive loan;

(b) On or about November 3, 2006, ETC/Welch received $139,178.00 from WAC's loan proceeds on 3565 Deep Cove Drive; and

(c) On or about November 3, 2006, Linc received $97,052.00 from WAC's loan proceeds on its 1350 Brisbane Drive loan; and

-16-

(d)     On or about November·3, 2006, Linc received $86,428.00 from WAC's loan proceeds on its 1806 Hammond Woods Circle loan.

48.

In total, ETC/Welch received at least $139,178.00 from WAC's fraudulently procured loan proceeds.

49.

In total, Linc received at least $263,706.00 from WAC's fraudulently procured loan proceeds.

### The Title Insurance Claims and Payments

50.

As a result of the above-referenced junior security interest positions and losses resulting therefrom, the Insured Lenders presented title insurance claims to Plaintiffs under the title insurance policies issued by Plaintiffs to the Insured Lenders with respect to the subject secured loans. CTIC was the insurer under title insurance policies issued to DJ and Bristol with respect to the above-referenced loans, and FNTIC was the insurer under title insurance policies issued to WAC with respect to the above-referenced loans.

51.

As a result of the above-referenced junior security interest positions and losses resulting therefrom, Plaintiffs have made payments to the Insured Lenders

-17-

for the resolution of such title insurance claims, thereby becoming subrogated to the rights, claims, and interests of the Insured Lenders with respect to such loans, including the right to recover the above-referenced proceeds of those loans that were received by Defendants.

## COUNT I

## Unjust Enrichment/Constructive Trust

52.

Plaintiffs re-allege the foregoing paragraphs 1-51 as if fully set forth herein.

53.

After August 2006, Defendants knew or should have known that the source of funds they received in payment of their loans to ARM/Farley came from other lenders, such as the Insured Lenders, that had been defrauded by ARM/Farley.

54.

Defendants have been unjustly enriched by their receipt of proceeds from the loans that ARM/Farley fraudulently procured from the Insured Lenders. Accordingly, it would be inequitable for Defendants to retain the value of the proceeds from which they benefited by way of receipt of proceeds from such fraudulently procured loans.

AT1 32520167.8

55.

To remedy such unjust enrichment, CTIC, as subrogee of DJ as an Insured Lender, is entitled to a judgment and imposition of a constructive trust against ETC/Welch and Welch for $355,188.31 in fraudulently procured loan proceeds which benefited ETC/Welch and Welch, plus pre-judgment interest thereon.

56.

To remedy such unjust enrichment, CTIC, as subrogee of DJ as an Insured Lender, is entitled to a judgment and imposition of a constructive trust against Linc and Newton for $477,937.29 in fraudulently procured loan proceeds which benefited Linc and Newton, plus pre-judgment interest thereon.

57.

To remedy such unjust enrichment, CTIC, as subrogee of Bristol as an Insured Lender, is entitled to a judgment and imposition of a constructive trust against ETC/Welch and Welch for $236,591.68 in fraudulently procured loan proceeds which benefited ETC/Welch and Welch, plus pre-judgment interest thereon.

58.

To remedy such unjust enrichment, CTIC, as subrogee of Bristol as an Insured Lender, is entitled to a judgment and imposition of a constructive trust

-19-

against Linc and Newton for $144,378.04 in fraudulently procured loan proceeds which benefited Linc and Newton, plus pre-judgment interest thereon.

59.

To remedy such unjust enrichment, FNTIC, as subrogee of WAC as an Insured Lender, is entitled to a judgment and imposition of a constructive trust against ETC/Welch and Welch in the amount of $139,178.00 in fraudulently procured loan proceeds which benefited ETC/Welch and Welch, plus pre-judgment interest thereon.

60.

To remedy such unjust enrichment, FNTIC, as subrogee of WAC as an Insured Lender, is entitled to a judgment and imposition of a constructive trust against Linc and Newton in the amount of $263,706.00 in fraudulently procured loan proceeds which benefited Linc and Newton, plus pre-judgment interest thereon.

## COUNT II

### Violation of the Georgia Uniform Fraudulent Transfers Act

### O.C.G.A. § 18-2-70 et. seq.

61.

Plaintiffs re-allege the foregoing paragraphs 1-60 as if fully set forth herein.

-20-

62.

In fraudulently procuring the DJ, Bristol, and WAC Loans, ARM/Farley acted with the intent to defraud the Insured Lenders.

63.

In receiving the benefit of the proceeds of the fraudulently procured loan proceeds, Defendants did not act in good faith in that they knew or should have known that the funds that they were receiving were fraudulently procured.

64.

Pursuant to Georgia's adoption of the Georgia Uniform Fraudulent Transfers Act, O.C.G.A. § 18-2-70, *et. seq.*, CTIC, as subrogee of DJ as an Insured Lender, is entitled to judgment and imposition of a constructive trust against ETC/Welch and Welch for $355,188.31 in fraudulently procured loan proceeds which benefited ETC/Welch and Welch, plus pre-judgment interest thereon.

65.

Pursuant to Georgia's adoption of the Georgia Uniform Fraudulent Transfers Act, O.C.G.A. § 18-2-70, *et. seq.*, CTIC, as subrogee of DJ as an Insured Lender, is entitled to a judgment and imposition of a constructive trust against Linc and Newton for $477,937.29 in fraudulently procured loan proceeds which benefited Linc and Newton, plus pre-judgment interest thereon.

66.

Pursuant to Georgia's adoption of the Georgia Uniform Fraudulent Transfers Act, O.C.G.A. § 18-2-70, *et. seq.*, CTIC, as subrogee of Bristol as an Insured Lender, is entitled to a judgment and imposition of a constructive trust against ETC/Welch and Welch for $236,591.68 in fraudulently procured loan proceeds which benefited ETC/Welch and Welch, plus pre-judgment interest thereon.

67.

Pursuant to Georgia's adoption of the Georgia Uniform Fraudulent Transfers Act, O.C.G.A. § 18-2-70, *et. seq.*, CTIC, as subrogee of Bristol as an Insured Lender, is entitled to a judgment and imposition of a constructive trust against Linc and Newton for $144,378.04 in fraudulently procured loan proceeds which benefited Linc and Newton, plus pre-judgment interest thereon.

68.

Pursuant to Georgia's adoption of the Georgia Uniform Fraudulent Transfers Act, O.C.G.A. § 18-2-70, *et. seq.*, FNTIC, as subrogee of WAC as an Insured Lender, is entitled to a judgment and imposition of a constructive trust against ETC/Welch and Welch in the amount of $139,178.00 in fraudulently procured loan proceeds which benefited ETC/Welch and Welch, plus pre-judgment interest thereon.

ATI 32520167.8

69.

Pursuant to Georgia's adoption of the Georgia Uniform Fraudulent Transfers Act, O.C.G.A. § 18-2-70, *et. seq.*, FNTIC, as subrogee of WAC as an Insured Lender, is entitled to a judgment and imposition of a constructive trust against Linc and Newton in the amount of $236,706.00 in fraudulently procured loan proceeds which benefited Linc and Newton, plus pre-judgment interest thereon.

## **COUNT III**

## **GEORGIA RICO**

### **O.C.G.A. § 16-14-1 *et. seq.***

70.

Plaintiffs reallege the foregoing paragraphs 1-69 as if fully set forth herein.

71.

As alleged more fully above, ARM/Farley engaged in a pattern of racketeering activity pursuant to which it engaged in multiple predicate acts, including but not limited to violations of O.C.G.A. §§ 16-8-102 (residential mortgage fraud) and 16-8-3 (theft by deception), that resulted in the wrongful acquisition of loan funds from the Insured Lenders, the proceeds of which were acquired by Defendants in violation of O.C.G.A. § 16-14-4(a).

72.

Pursuant to O.C.G.A. § 16-14-6, Plaintiffs, as subrogees of the Insured Lenders, are entitled to civil remedies against Defendants, including but not limited to: (a) damages equal to three times the amount of the above-referenced funds that have been acquired by Defendants in proceeds from the loans that ARM/Farley wrongfully procured from the Insured Lenders; and (b) Plaintiffs' expenses of litigation and investigation, including reasonable attorneys fees.

## COUNT IV

## EXPENSES OF LITIGATION

## O.C.G.A. § 13-6-11

73.

Plaintiffs reallege the foregoing paragraphs 1-72 as if fully set forth herein.

74.

Defendants have acted in bad faith with respect to the underlying subject matter of this action, and Plaintiffs, as subrogees to the Insured Lenders, are thus entitled to an award of their expenses of litigation, including reasonable attorneys fees, pursuant to O.C.G.A. § 13-6-11.

ATI 32520167.8

## COUNT V

## PUNITIVE DAMAGES

### O.C.G.A. § 51-12-5.1

75.

Plaintiffs reallege the foregoing paragraphs 1-74 as if fully set forth herein.

76.

Defendants in their acts and omissions with respect to the subject matter of this action have exhibited an entire want of care which would raise the presumption of conscious indifference to the consequences to other persons such as the Insured Lenders that were the victims of ARM/Farley.

77.

Accordingly, Plaintiffs, as subrogees to the Insured Lenders, are entitled to an award of punitive damages against Defendants pursuant to O.C.G.A. § 51-12-5.1 in an amount up to $250,000.

**WHEREFORE,** Plaintiffs respectfully prays that this Court grant the following relief:

(a)     Under Counts I and II,

(i)     judgment for damages and imposition of a constructive trust in favor of CTIC, as subrogee of DJ as an Insured Lender, against

-25-

ETC/Welch and Welch, jointly and severally, in the amount of $355,188.31;

(ii)   judgment for damages and imposition of a constructive trust in favor of CTIC, as subrogee of DJ as an Insured Lender, against Linc and Newton, jointly and severally, in the amount of $477,937.29;

(iii)   judgment for damages and imposition of a constructive trust in favor of CTIC, as subrogee of Bristol as an Insured Lender, against ETC/Welch and Welch, jointly and severally, in the amount of $236,591.68;

(iv)   judgment for damages and imposition of a constructive trust in favor of CTIC, as subrogee of Bristol as an Insured Lender, against Linc and Newton, jointly and severally, in the amount of $144,378.04, including court costs, interest, and attorneys' fees;

(v)   judgment for damages and imposition of a constructive trust in favor of FNTIC, as subrogee of WAC as an Insured Lender, against ETC/Welch and Welch, jointly and severally, in the amount of $139,178.00; and

(vi)   judgment for damages and imposition of a constructive trust in favor of FNTIC, as subrogee of WAC as an Insured Lender, against Linc and Newton, jointly and severally, in the amount of $263.706.00.

(b)   Under Count III, for the relief requested with respect to Counts I and II, but with the damage amounts trebled, plus an award to Plaintiffs, as subrogees of the Insured Lenders, of their reasonable expenses of litigation and investigation, including attorneys fees;

(c)   Under Count IV, for an award to Plaintiffs, as subrogees of the Insured Lenders, against Defendants for Plaintiffs' expenses of litigation, including reasonable attorneys fees;

(d)   Under Count V, for an award to Plaintiffs, as subrogees of the Insured Lenders, against Defendants for punitive damages in an amount to be determined by the jury up to $250,000;

(e)   A trial by jury; and

(f)   Such other and further relief as may be just and proper.

ATI 32520167.8

## CERTIFICATE OF FONT SIZE

Pursuant to LR 7.1(D), N.D. Ga., I hereby certify that this Complaint has been prepared in compliance with LR 5.1(B), using Times New Roman 14 point type.

Respectfully submitted this 30th day of January, 2009.

SEYFARTH SHAW LLP

Craig K. Pendergrast
Georgia Bar No. 571155
Eric F. Barton
Georgia Bar No. 040704

*Attorneys for Plaintiffs*

One Peachtree Pointe
1545 Peachtree Street, N.E., Suite 700
Atlanta, GA  30309
Telephone:  (404) 885-1500
Fax:          (404) 892-7056

AT1 32520167.8